# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **WALHONDE TOOLS, INC.,** | ) | |
| 1255 Childress Road, South Charleston, | ) | |
| West Virginia 25309 | ) | **Civil Action No. 2:19-cv-1009** |
| | ) | |
| Plaintiff, | ) | **Judge _____** |
| | ) | |
| v. | ) | **Magistrate Judge _____** |
| | ) | |
| **BEAR CLAMP COMPANY, LLC,** | ) | **DEMAND FOR JURY TRIAL** |
| P.O. Box 80, Enon, Ohio 45323 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DAVID R. KUEKER,** | ) | |
| 3423 East Powell Road, Lewis Center, Ohio | ) | |
| 43035 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Walhonde Tools, Inc. ("Walhonde"), for its complaint against Bear Clamp Company, LLC ("Bear Clamp") and David R. Kueker alleges as follows:

## THE PARTIES

1.     Plaintiff Walhonde is a corporation organized and existing under the laws of the State of West Virginia, with its principal place of business at 1255 Childress Road, South Charleston, West Virginia 25309.

2.     Upon information and belief, Defendant Bear Clamp is a limited liability company organized under the laws of the State of Ohio, having Christopher Robin Taylor, P.O. Box 80, Enon, Ohio 45323, listed as registered agent.

3.     Defendant David R. Kueker is an individual residing at 3423 East Powell Road, Lewis Center, Ohio 43035.  Upon information and belief, Mr. Kueker is currently a principal of Bear Clamp.

## NATURE OF THE ACTION

4.     This is an action for patent infringement of U.S. Pat. No. 9,808,893 ("the '893 Patent") in violation of the United States patent laws, 35 U.S.C. § 100, *et seq*., false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*., and the Ohio Uniform Trade Secrets Act, § 1333.61, *et seq.*, and unfair competition and breach of contract under the laws of the State of Ohio.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the patent claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has subject matter jurisdiction over the trademark infringement claim under 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

7.     This Court has subject matter jurisdiction over the federal trade secret misappropriation claim under 18 U.S.C. § 1836(c).

8.     This Court has subject matter jurisdiction over the state breach of contract, trade secret misappropriation and unfair competition claims under 28 U.S.C. § 1367 (supplemental jurisdiction) because these claims are so related to the patent claim that they form part of the same case or controversy.

9.     This Court has personal jurisdiction over Bear Clamp at least because Bear Clamp is incorporated in the State of Ohio and has committed acts of patent infringement within the

State of Ohio and this Judicial District in violation of 35 U.S.C. § 271, Bear Clamp transacts business within the State of Ohio and this Judicial District, and Bear Clamp solicits customers in the State of Ohio and this Judicial District.  In short, Bear Clamp has purposely availed itself of the privileges and benefits of the laws of the State of Ohio, and Bear Clamp derives benefits from its presence in this Judicial District.  Upon information and belief, Bear Clamp also derives substantial revenue from infringing products offered for sale, sold and used within this Judicial District, and should reasonably expect its actions to have consequences within this Judicial District.

10.     Moreover, Bear Clamp is subject to specific personal jurisdiction in this case because at least part of Walhonde's claims arise from Bear Clamp's activities in the State of Ohio and this Judicial District.

11.     Bear Clamp represents that it has a presence in this Judicial District on its website.

12.     Bear Clamp interacts in a targeted way with existing or potential customers in this Judicial District through localized customer support.

13.     This Court has personal jurisdiction over David R. Kueker because he is domiciled within this Judicial District.

14.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b), 1391 (c) and 1400(b).

**FACTUAL BACKGROUND**

15.     Founded by Kay and Gary McClure in 1986, Walhonde was formed to invent, manufacture and market tube and pipe alignment tools used in heavy industrial construction projects.

16.     Walhonde has been awarded numerous patents protecting its tube and pipe fitting tool lines, which are used in the power, paper and pulp, petro-chemical, food and drug processing, shipbuilding, and repair industries worldwide. Walhonde customers include many Fortune 500 companies, as well as NASA and the U.S. Navy.

17.     Walhonde is the owner of all right, title, and interest in '893 Patent entitled "Apparatus for Aligning Sections of Pipe."

18.     The application leading to the '893 Patent was filed by Matthew W. McClure, a son Walhonde's founders, on December 18, 2014 and was assigned to Walhonde prior to issuance.

19.     The '893 Patent was duly and properly issued by the United States Patent and Trademark Office on November 7, 2017. A true and correct copy of the '893 Patent is attached hereto as Exhibit A.

20.     Walhonde's products are offered for sale and rent through the company's website, www.Walhonde.com. Walhonde also sells and rents its tools through sales representatives.

21.     Walhonde owns and possesses certain confidential, proprietary and trade secret information, such as compilations, methods, techniques, processes, procedures, programs and customer information, which constitute trade secrets.

22.     Walhonde took reasonable measures to maintain the secrecy and confidentiality of such information, including by subjecting those employees who use the information to confidentiality provisions and limitations.

23.     For a number of years, including during or about 2014-2016, David R. Kueker was employed by Walhonde as a Sales Representative.

24.     On March 11, 2015, and again on January 16, 2016, Walhonde entered valid, binding representation agreements with Mr. Kueker who was doing business under the name Tube and Pipe Technologies ("Agreements").  Upon information and belief, Mr. Kueker was the sole officer of Tube and Pipe Technologies.

25.     Under the March 11, 2015 Agreement, Mr. Kueker was required to "devote such time, energy and skill on a regular and consistent basis as is necessary to sell and promote the sale of Walhonde's tools in the Territory during the term of the Agreement."  The Agreement further states that Mr. Kueker "agrees not to copy or assist any others in copying or in designing around Walhonde's products within or without a patent protected country.  All trade secrets and trademarks will be honored by [Mr. Kueker]."  The Agreement further states that Mr. Kueker "agrees not to compete with Walhonde's products in any way whatsoever during the term of this Agreement and for a period of three (3) years after the termination of this Agreement."

26.     The January 16, 2016 Agreement was entered between Walhonde and "Tube and Pipe Technologies (David Kueker)" as Representative.   The Agreement states, "[i]nformation furnished by [Walhonde] to Representative with respect to the products, services, and their application, installation, and repair that is designated by [Walhonde] as confidential or proprietary shall be held by Representative in confidence and used only for the purpose set forth in this Agreement during the term of this Agreement."  January 16, 2016 Agreement at 5-6.  The Agreement further states, "[t]his Agreement shall be effective on January 1, 2016 and shall continue until December 31, 2016.  This Agreement shall automatically renew unless terminated by either party . . . ."  *Id.* at 4-5.

27.     The information Walhonde disclosed to Mr. Kueker during his employment as a Walhonde representative included customer lists, price lists and tool specifications.  That information constitutes Confidential Information under the terms of the Agreements.

28.     Bear Clamp was aware of the Agreements and their obligations but nevertheless recruited and employed Mr. Kueker to solicit Walhonde customers, intentionally inducing him not to comply with the Agreements, without any justification.

29.     On information and belief, in or about September 2017, Bear Clamp began offering alignment tools that infringe the '893 Patent.

30.     Bear Clamp's website offers "Rounding Rings" which incorporate proprietary Walhonde designs.

31.     Bear Clamp's website offers "Alignment and Forming Clamps" that infringe the '893 Patent.   Bear Clamp manufactures and sells four models of Alignment and Forming Clamps: (1) the Polar model; (2) the Kodiak model; (3) the Grizzly model; and (4) the Cub model (collectively, the "Accused Devices").

**FIRST CAUSE OF ACTION**
**INFRINGEMENT OF THE '893 PATENT**

32.     Walhonde restates and realleges the allegations set forth in paragraphs 1 through 31 above and incorporates them by reference.

33.     Upon information and belief, Bear Clamp has infringed and continues to infringe, either literally or under the doctrine of equivalents, at least Claim 1 of the '893 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale or selling within the United States the Accused Devices and/or by importing into the United States the Accused Devices.

34.     Upon information and belief, Bear Clamp has also infringed and continues to infringe at least Claim 1 of the '893 Patent in violation of 35 U.S.C. § 271(b) by inducing

6

vendors, customers and others to make, use, sell, or offer for sale within the United States, products or processes that practice inventions of the '893 Patent with knowledge of and intent that such vendors, customers and others infringe the '893 Patent. Bear Clamp has intentionally caused, urged, encouraged, or aided in the action that induced infringement, including direct infringement, of the '893 Patent by vendors, customers and others. Upon information and belief, such intentional action includes, for example, inducing customers to infringe the '893 Patent by advertising the use of the Bear Clamp. As a result of its conduct, Bear Clamp has induced and is inducing such vendors, customers and others to make or use systems and methods, such as the Accused Devices, to infringe at least Claim 1 of the '893 Patent. Bear Clamp has engaged and is engaging in this conduct while aware of the '893 Patent and with the intent to infringe, at least as of the filing of the Complaint.

35. Claim 1 recites: "[a]n apparatus for aligning sections of pipe . . . ." Based on present information, the Accused Devices are apparatuses for aligning sections of pipe. The following picture depicts an example of an Accused Device.



Lifting Hooks

Alignment Pin

Turnbuckle Assembly

Jackbolts

Clamp Rings 1 & 2

Latch Bolts

Latch safety Pin

*See* Bear Clamp's Operating Instructions for Bear Clamp Alignment Clamps.  Line drawings of exemplary Accused Devices are also shown below:



36.     Claim 1 further recites: "a first clamp member comprising a first clamp jaw and a second clamp jaw longitudinally spaced from the first clamp jaw . . . ." The Accused Devices include a first clamp member comprising a first clamp jaw and a second clamp jaw longitudinally spaced from the first clamp jaw. For example, a first clamp member comprising a first clamp jaw (22) and a second clamp jaw (24) longitudinally spaced from the first clamp jaw are shown in the following figure:



37.     Claim 1 further recites: "a second clamp member comprising a first clamp jaw and a second clamp jaw longitudinally spaced from the first clamp jaw . . . ." The Accused Devices include a second clamp member comprising a first clamp jaw and a second clamp jaw longitudinally spaced from the first clamp jaw. For example, a second clamp member comprising a first clamp jaw (26) and a second clamp jaw (28) longitudinally spaced from the first clamp jaw are shown in the following figure:



38.     Claim 1 further recites: "a first hinge comprising an elongated portion having a first aperture and a second aperture wherein the first aperture is spaced apart from the second aperture . . . ."  The Accused Devices include a first hinge comprising an elongated portion having a first aperture and a second aperture wherein the first aperture is spaced apart from the second aperture.  For example, a first hinge (20a) comprising an elongated portion having a first aperture and a second aperture wherein the first aperture is spaced apart from the second aperture is shown in the following figure:



20a

39.     Claim 1 further recites: "a first pivot member inserted through the first aperture of the first hinge and pivotally coupling the first hinge to the first clamp jaw of the first clamp member . . . ."  The Accused Devices include a first pivot member inserted through the first aperture of the first hinge and pivotally coupling the first hinge to the first clamp jaw of the first clamp member."  For example, a pivot member is inserted through aperture (52a) of the first clamp jaw (22) of the first clamp member, and through a first aperture in the first hinge (20a), pivotally coupling the first hinge (20a) to the first clamp jaw (22) of the first clamp member, as indicated in the following figure:



40.     Claim 1 further recites: "a second pivot member inserted into the second aperture of the first hinge and pivotally coupling the first hinge to the first clamp jaw of the second clamp member . . . ."  The Accused Devices include a second pivot member inserted into the second aperture of the first hinge and pivotally coupling the first hinge to the first clamp jaw of the second clamp member. For example, a pivot member is inserted through aperture (52b) of the first clamp jaw (26) of the second clamp member, and through a second aperture in the first hinge (20a), pivotally coupling the first hinge (20a) to the first clamp jaw (26) of the second clamp member, as indicated in the following figure:



41.     Claim 1 further recites:  "a second hinge comprising an elongated portion having a first aperture and a second aperture wherein the first aperture is spaced apart from the second aperture . . . ."  The Accused Devices include a second hinge comprising an elongated portion having a first aperture and a second aperture wherein the first aperture is spaced apart from the second aperture.  For example, a second hinge (20b) comprising an elongated portion having a first aperture and a second aperture wherein the first aperture is spaced apart from the second aperture is shown in the following figure:



20b

42.    Claim 1 further recites: "a third pivot member inserted through the first aperture of the second hinge and pivotally coupling the second hinge to the second clamp jaw of the first clamp member . . . ."  The Accused Devices include a third pivot member inserted through the first aperture of the second hinge and pivotally coupling the second hinge to the second clamp jaw of the first clamp member.  For example, a third pivot member is inserted through aperture (52c) of the second clamp jaw (24) of the first clamp member, and through a first aperture in the second hinge (20b), pivotally coupling the second hinge (20b) to the second clamp jaw (24) of the first clamp member, as indicated in the following figure:



43.    Claim 1 further recites: "a fourth pivot member inserted into the second aperture of the second hinge and pivotally coupling the second hinge to the second clamp jaw of the second clamp member . . . ."  The Accused Devices include a fourth pivot member inserted into the second aperture of the second hinge and pivotally coupling the second hinge to the second clamp jaw of the second clamp member.  For example, a fourth pivot member is inserted through aperture (52d) of the second clamp jaw (28) of the second clamp member, and through a first aperture in the second hinge (20b), pivotally coupling the second hinge (20b) to the second clamp jaw (28) of the first clamp member, as indicated in the following figure:



44.     Claim 1 further recites: "a first plurality of turnbuckle assemblies, each one of the first plurality of turnbuckle assemblies being coupled with each one of, and adjustable to vary the longitudinal spacing between, the first clamp jaw and the second clamp jaw of the first clamp member . . . ."  The Accused Devices include a first plurality of turnbuckle assemblies, each one of the first plurality of turnbuckle assemblies being coupled with each one of, and adjustable to vary the longitudinal spacing between, the first clamp jaw and the second clamp jaw of the first clamp member.  For example, a first plurality of turnbuckle assemblies (30a) are identified in the following figure:



30a

45.     Claim 1 further recites: "a second plurality of turnbuckle assemblies, each one of the second plurality of turnbuckle assemblies being coupled with each one of, and adjustable to vary the longitudinal spacing between, the first clamp jaw and the second clamp jaw of the second clamp member." The Accused Devices include a second plurality of turnbuckle assemblies, each one of the second plurality of turnbuckle assemblies being coupled with each one of, and adjustable to vary the longitudinal spacing between, the first clamp jaw and the second clamp jaw of the second clamp member. For example, a second plurality of turnbuckle assemblies (30b) are identified in the following figure:



30b

46.     Walhonde has been damaged by Bear Clamp's infringement of the '893 Patent, has been irreparably harmed by that infringement, and will suffer additional damages and irreparable harm unless this Court enjoins Bear Clamp from further infringement.

47.     Upon information and belief, the infringement of one or more claims of the '893 Patent by Bear Clamp has been and continues to be willful and deliberate.  As a result, Walhonde is entitled to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

48.     Walhonde restates and realleges the allegations set forth in paragraphs 1 through 47 above and incorporates them by reference.

49.     The information Walhonde disclosed to Mr. Kueker during his employment as a Walhonde representative, including customer lists, price lists and tool specifications, constitutes Confidential Information under the terms of the Agreements.

50.     Walhonde fully performed under the terms of the Agreements.

51.     Upon information and belief, Mr. Kueker has breached the Agreements by copying Walhonde patented tools and by using Confidential Information provided by Walhonde for impermissible purposes, including the benefit of Bear Clamp, in direct contravention of the terms of the Agreements.

52.     As a result of Mr. Kueker's breach of the Agreements, Walhonde has lost sales and suffered damages, for which damages Mr. Kueker is liable.

**THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT (CONFIDENTIALITY PROVISION)**

53.     Walhonde restates and realleges the allegations set forth in paragraphs 1 through 52 above and incorporates them by reference.

54.     Walhonde owns and possesses certain confidential, proprietary and trade secret information, such as compilations, methods, techniques, processes, procedures, programs and customer information, which constitute trade secrets.

55.     Walhonde took reasonable measures to maintain the secrecy and confidentiality of such information, including by subjecting those employees who use the information to confidentiality provisions and limitations.

56.     Mr. Kueker was subject to the Agreements and had a duty to maintain the confidentiality of Walhonde's trade secrets. Mr. Kueker executed Agreements pursuant to which he agreed:

> Agent agrees and acknowledges that some of Walhonde's products are covered by patents granted by or applications pending before the United States Patent Office. Agent agrees not to copy or assist any others in copying or designing around Walhonde's products within or without a patent protected country. All trade secrets and trademarks will be honored by Agent. Agent agrees not to compete with Walhonde's products in any way whatsoever during the term of this Agreement and for a period of three (3) years after the termination of this Agreement.

*See* March 11, 2015 Sales Representative Agreement.

57. The promises made by Mr. Kueker were material terms to the Agreements, which were executed by Mr. Kueker in exchange for employment with Walhonde.

58. Walhonde furnished and made available to Mr. Kueker highly proprietary information by virtue of his roles within the company.

59. Upon information and belief, Mr. Kueker is in breach of the Agreements by using Walhonde's proprietary and confidential information, including customer and price lists, to unfairly compete with Walhonde.

60. Mr. Kueker's breaches have resulted in damages to Walhonde in an amount to be proven at trial, but which, upon information and belief, exceed $75,000.

61. As a result of this breach, Walhonde has suffered and continues to suffer damages and irreparable loss, including, but not limited to, the loss of business, loss of goodwill, and other damages for which there is no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### UNFAIR COMPETITION UNDER OHIO COMMON LAW

62. Walhonde restates and realleges the allegations set forth in paragraphs 1 through 61 above and incorporates them by reference.

63. Bear Clamp and Mr. Kueker have intentionally and in bad faith misappropriated a commercial advantage belonging solely to Walhonde. Bear Clamp and Mr. Kueker gained an

unfair advantage through their intentional misappropriation of Walhonde's patented technology and rights, because Bear Clamp and Mr. Kueker bore little or no development expense in copying said ideas and technology.

64.     Mr. Kueker induced Walhonde into signing the Agreements to obtain access to Walhonde's confidential information, despite having no intention of abiding by the terms; instead, Mr. Kueker misappropriated Walhonde's confidential information for Bear Clamp's and his own benefit.

65.     The forgoing conduct of Bear Clamp and Mr. Kueker constitutes unfair competition under Ohio common law.

66.     As a result of the forgoing conduct, Walhonde has sustained both damages and irreparable harm.

**FIFTH CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH CONTRACT**

67.     Walhonde restates and realleges the allegations set forth in paragraphs 1 through 66 above and incorporates them by reference.

68.     Mr. Kueker had valid contracts with Walhonde that prohibited him, among other things, from soliciting Walhonde customers and using Walhonde's confidential information in a manner adverse to Walhonde for three years after the termination of his employment.

69.     Bear Clamp was aware of the Agreements and their obligations but nevertheless recruited and employed Mr. Kueker to solicit Walhonde Customers, intentionally inducing him not to comply with the Agreements, without any justification.

70.     As a result of Bear Clamp's conduct, Walhonde has suffered and continues to suffer damages and irreparable loss, including, but not limited to, the loss of business, loss of goodwill, and other damages for which there is no adequate remedy at law.

71.     Defendant Bear Clamp's actions constitute tortious interference with a contract.

72.     Defendants' breach has resulted in damages to Plaintiff in an amount to be proven at trial, but which, upon information and belief, exceed $75,000.

**SIXTH CAUSE OF ACTION**
**UNFAIR COMPETITION AND FALSE DESIGNATION**
**OF ORIGIN UNDER 15 U.S.C. § 1125(A)**

73.     Walhonde restates and realleges the allegations set forth in paragraphs 1 through 72 above and incorporates them by reference.

74.     For over 30 years, Walhonde has designed and manufactured quality pipe alignment tools, like its Top Liner™ line, which are distinctive and recognized by relevant consumers as Walhonde products.

75.     Bear Clamp has purposefully, willfully and maliciously continued to promote, market, sell and/or offer to sell (directly or through intermediaries) products and services under the Bear Clamp name and mark which are, in fact, Walhonde products.  Below is a photograph of David R. Kueker at an Ohio trade show, demonstrating products he represents. The pipe alignment tool in front of Mr. Kueker is identified as a Bear Clamp tool but is actually a Walhonde Top Liner™ tool:



76.     Bear Clamp's wrongful use of authentic Walhonde products to promote, market, sell and/or offering to sell counterfeit Bear Clamp products or services in direct competition with Walhonde's products and services is likely to cause confusion, mistake, and/or deception among customers.

77.     Bear Clamp's acts complained of herein constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

78.     Upon information and belief, this unfair competition and false designation of origin is knowing and willful.

79.     As a proximate result of Bear Clamp's acts complained of herein, Walhonde has suffered and will continue to suffer substantial damages to its reputation and goodwill, as well as injury to its current and potential customer base and loss of revenue, in an amount not yet ascertained.

80.     Walhonde is further entitled to recover Bear Clamp's profits and reasonable royalties for the improper use of Walhonde products to promote sales of infringing Bear Clamp products.

**SEVENTH CAUSE OF ACTION**
**DEFEND TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836, *et seq.*)**

81.     Walhonde restates and realleges the allegations set forth in paragraphs 1 through 80 above and incorporates them by reference.

82.     Mr. Kueker misappropriated what he knew or should have known were Walhonde trade secrets, without the consent or authority of Walhonde, in violation of 18 U.S.C. § 1836, *et seq.*, the Defend Trade Secrets Act of 2016.

83.     Walhonde's compilation of proprietary and confidential business information, including customer lists, price lists, competitor strategies, sales reports, and information related to product launches and development, constitutes trade secrets.

84.     Walhonde took reasonable measures to maintain the secrecy and confidentiality of such information, including by subjecting those employees who use the information to confidentiality provisions and limitations. Mr. Kueker was subject to such Agreements and had a duty to maintain confidentiality.

85.     Mr. Kueker knew that such information was confidential and proprietary, had access to this information, and acquired this information for disclosure and use.

86.     This confidential, proprietary and trade secret information has been assembled over time, with much effort and expense and derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

87. Walhonde did not consent to or authorize Mr. Kueker's use of Walhonde trade secrets following his resignation. Nor did Walhonde consent to or authorize Mr. Kueker's disclosure of Walhonde trade secrets to its competitor Bear Clamp.

88. As a result of Bear Clamp's conduct, Walhonde has suffered and continues to suffer damages and irreparable loss, including, but not limited to, the loss of business, loss of goodwill, and other damages for which there is no adequate remedy at law.

89. Mr. Kueker has failed to return Walhonde' confidential, proprietary and trade secret information. If Mr. Kueker's conduct is not remedied and/or enjoined, Mr. Kueker will continue to misappropriate, disclose, and use for his own benefit, and to Walhonde' detriment, Walhonde' trade secret information.

90. Walhonde is entitled to damages, in an amount to be determined at trial, and affirmative relief to protect Walhonde's trade secret information, including a seizure of all documents, information and materials in Mr. Kueker's possession concerning or relating to Walhonde' trade secret information, as well as an award of exemplary damages and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### MISAPPROPRIATION OF TRADE SECRETS (Ohio)

91. Walhonde restates and realleges the allegations set forth in paragraphs 1 through 90 above and incorporates them by reference.

92. Mr. Kueker misappropriated what he knew or should have known were Walhonde trade secrets, without the consent or authority of Walhonde, in violation of Ohio's Uniform Trade Secrets Act, §1333.61, *et seq*.

93. Walhonde's compilation of proprietary and confidential business information, including customer lists, negotiated customer agreements, business and marketing plans, negotiated costs, operating expenses, sales reports, and profit margins, constitutes trade secrets.

94. Walhonde took reasonable measures to maintain the secrecy and confidentiality of such information, including by subjecting those employees who use the information to confidentiality provisions and limitations. Mr. Kueker was subject to such Agreements and had a duty to maintain confidentiality.

95. Mr. Kueker knew that such information was confidential and proprietary, had access to this information, and acquired this information for disclosure and use.

96. This confidential, proprietary and trade secret information has been assembled over time, with much effort and expense and derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

97. Walhonde did not consent to or authorize Mr. Kueker's use of Walhonde trade secrets following his resignation. Nor did Walhonde consent to or authorize Mr. Kueker's disclosure of Walhonde trade secrets to its competitor Bear Clamp.

98. As a result of Bear Clamp's conduct, Walhonde has suffered and continues to suffer damages and irreparable loss, including, but not limited to, the loss of business, loss of goodwill, and other damages for which there is no adequate remedy at law.

99. Mr. Kueker has failed to return Walhonde' confidential, proprietary and trade secret information. If Mr. Kueker's conduct is not remedied and/or enjoined, Mr. Kueker will continue to misappropriate, disclose, and use for his own benefit, and to Walhonde' detriment, Walhonde' trade secret information.

100. Mr. Kueker willfully and maliciously misappropriated Walhonde's trade secrets. As a result, Walhonde is entitled to damages, in an amount to be determined at trial, and affirmative relief to protect Walhonde's trade secret information, including a seizure of all documents, information and materials in Mr. Kueker's possession concerning or relating to Walhonde' trade secret information, as well as an award of exemplary damages and attorneys' fees pursuant to Ohio Rev. Code §§ 1333.63 and 1333.64.

## PRAYER FOR RELIEF

**WHEREFORE**, Walhonde prays for judgment:

A. that Bear Clamp has infringed and is infringing the '893 Patent;

B. that Mr. Kueker has breached the Agreements and misappropriated the trade secrets of Walhonde, in violation of federal and state law;

C. that Bear Clamp has violated Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

D. that Bear Clamp and Mr. Kueker have engaged in unfair competition in violation of the common law of the State of Ohio;

E. enjoining Mr. Kueker and Bear Clamp, its officers, agents, servants, employees, attorneys, successors and assigns and all other persons in active concert or participation with any of them from infringing, and/or inducing infringement of the '893 Patent;

F. enjoining Mr. Kueker and Bear Clamp, its officers, agents, servants, employees, attorneys, successors and assigns and all other persons in active concert or participation with any of them from falsely representing that authentic Walhonde goods and services are the goods and services of Bear Clamp, that the goods or services of Bear Clamp are licensed, authorized by, or

in any way associated with Walhonde, from otherwise unfairly competing with Walhonde, and from otherwise diluting or tarnishing Walhonde's business reputation.

G.      awarding Walhonde compensatory damages for Bear Clamp's direct and indirect infringement of the patent-in-suit, in an amount to be ascertained at trial, including at least a reasonable royalty and/or Walhonde's lost profits, together with interest and costs pursuant to 35 U.S.C. § 284;

H.      trebling the amount of compensatory damages for patent infringement pursuant to 35 U.S.C. § 284;

I.      awarding Walhonde damages arising out of Mr. Kueker's and Bear Clamp's unfair competition and breach of contract and interest thereon;

J.      awarding Walhonde all of Bear Clamp's profits and all damages, including lost profits, sustained as a result of Bear Clamp's wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate, pursuant to 15 U.S.C. § 1117(a) and Ohio State law;

K.      awarding Walhonde treble damages;

L.      awarding Walhonde an accounting and disgorgement of Bear Clamp's profits derived from Bear Clamp's wrongful acts;

M.      that the instant lawsuit is an exceptional case, pursuant to 15 U.S.C. §1117, entitling Walhonde to an award of their reasonable attorneys' fees, expenses, and costs in this action;

N.      awarding Walhonde reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

O.      granting Walhonde such other and further relief in law or in equity as this Court deems just or proper.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

s/ *Joseph R. Miller*
Joseph R. Miller (0068463), *Trial Attorney*
Elizabeth S. Alexander (0096401)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6400
Fax: (614) 719-4630
jrmiller@vorys.com
esalexander@vorys.com

*Local counsel for Plaintiff Walhonde Tools, Inc.*

and

John F. Ward
David G. Lindenbaum
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 808-7800
Fax: (973) 503-5950
jward@kelleydrye.com
dlindenbaum@kelleydrye.com

*Of counsel for Plaintiff Walhonde Tools, Inc.*

## DEMAND FOR JURY TRIAL

Walhonde demands a trial by jury on all issues so triable.

Dated: March 18, 2019

Respectfully submitted,

Vorys, Sater, Seymour and Pease LLP

s/ *Joseph R. Miller*
Joseph R. Miller (0068463), *Trial Attorney*
Elizabeth S. Alexander (0096401)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6400
Fax: (614) 719-4630
jrmiller@vorys.com
esalexander@vorys.com

*Local counsel for Plaintiff Walhonde Tools, Inc.*

and

John F. Ward
David G. Lindenbaum
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 808-7800
Fax: (973) 503-5950
jward@kelleydrye.com
dlindenbaum@kelleydrye.com

*Of counsel for Plaintiff Walhonde Tools, Inc.*